Phone: 1-800-579-9864
Fax: 1-360-294-2165
Email: admin@hanoverlawpc.com

HANOVER LAW, PC
1200 G. St. NW., Suite 800
Washington, DC 20005
2751 Prosperity Ave., Suite 150
Fairfax Virginia 22031

UNITED STATES DISTRICT COURT
*FOR THE* DISTRICT OF COLUMBIA

| | |
|---|---|
| MONIQUE KELLY<br>    Plaintiff<br><br>v.<br><br>NANCY A. BERRYHILL<br>Acting Director,<br>Social Security Administration<br>        Defendant | FED CASE: 17-1839<br>(SSA Case – OCO-16-0864-SSA)<br><br>Judge:<br>Next Event:<br>Date: |

## COMPLAINT

Comes now your plaintiff, Ms. Monique Kelly, through counsel, and petitions this Honorable Court to find in her favor regarding (a) her claim of retaliation by the SSA, (b) her claim of harassment/hostile working environment (non-sexual) by the SSA, and (c) her claim that the SSA failed to provide reasonable accommodations for her mental disability related to her military service.  This action comes upon the Agency's issuance of a final decision denying Ms. Kelly's claim.

I. **Claims before the Court**

1. Whether the Agency subjected Complainant to non-sexual harassment based on disability (mental) and retaliation (prior EEO activity) beginning August 2, 2016, and ongoing with respect to working conditions.

2. Whether the Agency failed to provide Complainant with a reasonable accommodation based on disability (mental) beginning January 12, 2016 and continuing.

Page **1** of **11**

Phone: 1-800-579-9864
Fax: 1-360-294-2165
Email: admin@hanoverlawpc.com

2751 Prosperity Ave., Suite 150
Fairfax Virginia 22031

HANOVER LAW, PC
1200 G. St. NW., Suite 800
Washington, DC 20005

II. **Basis for Jurisdiction**

3. This court has jurisdiction under 8 CFR §1614.407(a):

   A complainant who has filed an individual complaint, an agent who has filed a class complaint or a claimant who has filed a claim for individual relief pursuant to a class complaint is authorized under title VII, the ADEA and the Rehabilitation Act to file a civil action in an appropriate United States District Court:
   (a) Within 90 days of receipt of the final action on an individual or class complaint if no appeal has been filed;

4. In the instant case, the Report of Investigation was completed 12 May 2017. See. Exhibit 1, *Letter Accompanying Report of Investigation*.

5. The Agency issued their final decision approximately 87 days thereafter, on 07 August 2017. See, Exhibit 2, *Letter Indicating Agency Final Decision*.

6. This lawsuit is timely filed within 90 days of the issuance of the Agency's final decision.

III. **Ms. Kelly's Outstanding EEO Cases**

7. Ms. Kelly has three EEO actions, including this one. All relate to the same, on-going treatment at the SSA.

   i. July 2012: EEOC No. 531-2014-00188X. Disposition: Trial held in July 2015. No order or finding; still waiting on final disposition by the Judge.

   ii. April 2016: ROI completed in September, 2016. SSA: OCO-16-0226. Disposition: Before the EEO judge; however, the Agency has not responded since February 2017. We filed a motion with the judge and the opposing side; no action thus far. See, Exhibit 3, *Notice from EEO Judge*.

   iii. August 2016: Instant case. Hostile work environment, non-sexual harassment, retaliation, violation of ADA. Notice of Agency Final Decision on 07 August 2017.

IV. **Facts Concerning this Case**

   (Taken from the *Report of Investigation*, dated March 2017, Exhibit 1)

8. Ms. Kelly began working for the SSA under the Wounded Warriors Program in August 2009.

9. She has 100% service related disability.  This includes severe kidney and urinary track issues, as well as PTSD from combat service in Bosnia.

10. Her service related disabilities, and triggers, are known to the Agency and have on multiple occasions been provided, in writing, by my doctors.

11. With reasonable accommodation, Ms. Kelly is able to complete her work as a claims examiner.  Again, this has been supported by medical documentation.

12. Initial incidents of abuse began in May of 2012.  She complained of having been made to parade before my managers for them to determine if my dress was appropriate.  She also complained of harassment and failure to provide reasonable accommodations based on her disabilities.

13. There were numerous issues of abuse and alleged harassment between May 2012 and September 2016, resulting in two EEO filings for harassment, retaliation and failure to provide reasonable accommodations.  See, Section III above.

14. Among other situations, Ms. Kelly was assaulted by one of the technical experts (CSTE, TE Joy Smith who was eventually moved and then retired) in February 2015 at her desk.  This included throwing papers and an attempted punch.

15. Ms. Kelly continues to work for Ms. Comer despite repeated requests to transfer to a different building.

16. In September 2015, she provided a written summary of the treatment she was receiving, and further provided a list of triggers that exacerbated her PTSD anxiety and panic attacks.  See, ROI, Exhibit 1, page 4;  Exhibit 1, page 29.

17. On December 23, 2015, Ms. Kelly requested, and received permission to attend an Employee Assistance Program (EAP) counseling session.

18. She had been forced to work with the same CSTE that had assaulted earlier in the year.  This acted as a trigger, and she was feeling exceptionally concerned.

19. As relayed by Ms. Kelly (See, ROI, Exhibit 1, page 21; page 41):

> When I arrived at my appointment, I was disturbed by another worker and told that my supervisor needed to speak with me.  I declined, and I was asked did I need an ambulance, and my records were being discussed with management, and that management wanted me to go home and take administrative leave.  I informed counselor that I did not need an ambulance; that I did not make a

Phone: 1-800-579-9864
Fax: 1-360-294-2165
Email: admin@hanoverlawpc.com

2751 Prosperity Ave., Suite 150
Fairfax Virginia 22031

HANOVER LAW, PC
1200 G. St. NW., Suite 800
Washington, DC 20005

Phone: 1-800-579-9864
Fax: 1-360-294-2165
Email: admin@hanoverlawpc.com

2751 Prosperity Ave., Suite 150
Fairfax Virginia 22031

HANOVER LAW, PC
1200 G. St. NW., Suite 800
Washington, DC 20005

threat to myself neither anyone….I was force to go home on a threat of suicide, which I never stated to anyone.

Once I returned to work, I spoke with management on several occasions; I was told that an anonymous employee contacted her. When I wrote an email and asked Mrs. Comer a third time, I was told the Director contacted EAP.
[Note, email referred to in this quote is at ROI, Exhibit 1, page 36]

20. This is the same Director against whom Ms. Kelly filed an EEO complaint in EEOC No. 531-2014-00188X. Again, she was forced to work under the direct command and control of an individual with whom she had an outstanding EEO case. See, ROI, Exhibit 1, page 23.

21. Ms. Kelly again requested to move from the Building in March 2016, as working under this Director was a problem. The request was, and continues, to be denied.

22. Ms. Kelly's voluntary leave transfer program (VLTP) has been continuously clobbered by the SSA HR administration.

23. On January 11, 2017, Ms. Comer placed her hands on Ms. Kelly's head and slapped her forehead, saying she was using her "heeling hands" [sic - Kelly] to cure her of her "ales" [sic – Kelly].

24. On January 12, 2016, Mrs. Comer was approached by Ms. Kelly asking for assistance with the VLTP hours. She had run out of Family Medical Leave Act (FMLA) hours, and was facing additional leave without pay, or even "away without leave" (AWOL) status.

25. Earlier that week, another employee had offered use-or-lose hours to Ms. Kelly to help with Ms. Kelly's medical situation. However, Ms. Kelly could not accept them, as she had been "removed" from the VLTP list. It was for assistance with this problem that she came to speak with Ms. Comer on the 12th.

26. This problem has been ongoing and continuing since 2014, and HR continues to knock Ms. Kelly off the VLTP list on a constant basis. See, ROI, Exhibit 1, page 22.

27. On January 12, 2016 Ms. Kelly also spoke with Ms. Comer about the lack of a Performance and Communications System (PACS) assessment.

28. She eventually received her 2015 PACS in February 2016 – two months late. This issue has continued into 2017.  See, ROI, Exhibit 1, page 25.

29. She was promised a "4" and was then given a 3.5 after Ms. Kelly filed her EEO complaint.  See, ROI, Exhibit 1, page 23.

30. There was another assault incident on 02 August 2016 between Ms. Kelly and Mr. LaMance, another claims examiner in her unit.

31. On that day, Ms. Kelly approached Mr. LaMance to discuss claims work.  He yelled at her and indicated she had not done the work.  Ms. Kelly immediately discussed this incident with Ms. Comer.

32. Ms. Kelly was still at Ms. Comer desk when Ms. Comer called Mr. LaMance. After yelling at her, Mr. LaMance was told by Ms. Comer to "just do the work" because "Ms. Kelly is not a team player."

33. From the sound of Ms. LaMance's voice, this further enraged him.  Upon returning to her desk, Ms. Kelly was accosted by Mr. LaMance who continued to yell at her.  This was a trigger for her PTSD – an exact repeat of the situation between (TE) Ms. Smith (see paragraph 14 above).

34. Ms. Comer and the new CSTE Jonathan Thompson did nothing – allowed her to be publically berated in front of the entire unit.  See, Exhibit 1, page 20.

35. Ms. Comer called Ms. Kelly an "Easter killer" when Ms. Kelly volunteered to stay late over the Easter weekend to work on late or languishing claims.  This occurred on or about March 25, 2016.

36. When (TE) Ms. Smith was still working in the Module 17, she accused Ms. Kelly of breaching PII requirements.  This was later soundly refuted by evidence, but Ms. Smith continued to tell Ms. Comer about Ms. Kelly's PII work violations.

37. In December 2016, Ms. Comer grabbed/slapped Ms. Kelly's wrist and told her to turn around and speak with her (Ms. Comer).  When Ms. Kelly did, Ms. Comer demanded that she present to the entire module a speech on how her (Ms. Kelly's) PTSD worked and how it affected her and the Module.

38. Beginning in mid-2012, Ms. Kelly has requested reasonable accommodation. See, ROI, Exhibit 15, page 3.

Phone: 1-800-579-9864
Fax: 1-360-294-2165
Email: admin@hanoverlawpc.com

HANOVER LAW, PC
1200 G. St. NW., Suite 800
Washington, DC 20005
2751 Prosperity Ave., Suite 150
Fairfax Virginia 22031

39. In terms of the instant complaint, Ms. Kelly made a request for reasonable accommodation in July 2016, and again in August 2016 through her EAP counselor.  See, ROI, Exhibit 4, page 5.  This request was made in writing through the online reasonable accommodation portal on 08 November 2016.  See, ROI, Exhibit 15, page 1.

40. The request was provisionally approved, but since that time, has been consistently denied, then restarted, then denied.  This causes tremendous stress to Ms. Kelly.  At present, Ms. Kelly is on temporary accommodation – which can (and has) been revoked at leisure by her management.

41. Medical documentation indicates Ms. Kelly can successfully complete the essential functions of her job working from home where her situation is neither hostile nor stressful.  See, ROI, Exhibit 1, pages 29-31.

V.   CLAIM 1 – Retaliation based on complaint of harassment and prior EEO activity

42. All facts averred in Section IV are incorporated and adopted herein as if specifically pled in this Section.

43. The Agency has subject Ms. Kelly to retaliation and non-sexual harassment by creating an environment so hostile, that no reasonable employee could succeed in such a situation.

   i. Ms. Kelly engaged in prior protected activity (EEO filing and complaining about harassing treatment by TE Smith and Mr. LaMance).

   ii. Ms. Comer (Module Manager), her Director (Ms. Imani), and Mr. Ralph Davis (Deputy Module manager) were aware of the issues regarding Ms. Kelly's EEO filing, as they were named in the complaints, and further, Ms. Kelly specifically wrote to them about the incidents that were occurring in the Module.

   iii. After filing the instant EEO case, Ms. Comer continued to be Ms. Kelly's supervisor, even though Ms. Kelly complained of retaliation and harassment.  See, ROI, Exhibit 23, page 10.

   iv. Ms. Comer hit, slapped, and generally made life very difficult for Ms. Kelly.  Additionally, Ms. Comer demanded that Ms. Kelly present about

Phone: 1-800-579-9864
Fax: 1-360-294-2165
Email: admin@hanoverlawpc.com

HANOVER LAW, PC
2751 Prosperity Ave., Suite 150
Fairfax Virginia 22031
1200 G. St. NW., Suite 800
Washington, DC 20005

Phone: 1-800-579-9864
Fax: 1-360-294-2165
Email: admin@hanoverlawpc.com

2751 Prosperity Ave., Suite 150
Fairfax Virginia 22031

**HANOVER LAW**, PC
1200 G. St. NW., Suite 800
Washington, DC 20005

        her PTSD triggers to the entire Module – already enflaming a difficult working environment.  Ms. Comer's verbal assaults, including "Easter Killer" are further examples.  Despite repeated requests for assistance, Ms. Kelly's VLTP continued to be dropped or incorrectly recorded.  Ms. Comer failed to give Ms. Kelly a timely PACs (as outlined in Section IV, but also See, Exhibit 4, pages 48-49).

    v. All of these events occurred during the EEO investigation, or immediately incident to such EEO investigations.

44. Ms. Kelly has suffered exceptional harm as a result of her continued mistreatment in this unit.  This harm was exacerbated when the Module manager, Ms. Comer, refused to authorize a transfer to another building, away from the harassment.

45. For the harm experienced through retaliation, as outlined in the ROI, and applicable to Federal Agencies through 42 USC §2000e-16,  Ms. Kelly requests $300,000 in damages and emotional harm.  See, Exhibit 4, *Medical Documentation showing stress work is causing*.

46. Ms. Kelly also asks for all leave time lost due to this retaliation to be compensated back to her.

47. Ms. Kelly also asks that her attorney fees be completely covered.

48. Ms. Kelly requests that she be removed from this Module and placed in a different Building, so as to avoid any contact with the individuals in this Module.

VI. Claim 2 – Harassment based on disability

49. All facts averred in Section IV, and V are incorporated and adopted herein as if specifically pled in this Section.

50. The Agency has subject Ms. Kelly to retaliation and non-sexual harassment by creating an environment so hostile, that no reasonable employee could succeed in such a situation.

    i. Ms. Kelly has a disability that is known to the Agency.  See, ROI, Exhibit 1, pages 29-31.  This disability has been known from the time of hiring as a Wounded Warrior, but certainly after the initial EEO complaint in 2012.  The disability is both physical (urinary track and gynecological complications) and mental (PTSD related to war time service in Bosnia).

  ii. Ms. Kelly is a "qualified individual" possessing 9 years of claims examiner experience, advanced graduate degrees, and PACs ratings of at least 3 or higher for each year of service.

  iii. Ms. Kelly suffered direct discrimination as a result of her disability. She was not invited to agency functions, for example the Agency Luncheon on December 16, 2016. She was singled out and pushed to present on her PTSD issues in front of her module. She was told she was not a team player, and has been denied opportunities to join work teams and groups in the Module. Her PACs has been consistently late and not presented despite repeated requests; rather than meet with her, Mr. Ralph Davis simply signed on her behalf in November 2016, and did not present the PACs to her until well into 2017. See, ROI, Exhibit 23, page 3, paragraph 12.

  iv. The Agency treated Ms. Kelly differently because of her disability, and she suffered from their mistreatment.

51. Ms. Kelly has suffered exceptional harm as a result of her continued mistreatment in this unit. This harm was exacerbated when the Module manager, Ms. Comer, refused to authorize a transfer to another building, away from the harassment.

52. For the harm experienced through retaliation, as outlined in the ROI, and applicable to Federal Agencies through 42 USC §2000e-16, Ms. Kelly requests $300,000 in damages and emotional harm. See, Exhibit 4, *Medical Documentation showing stress work is causing*.

53. Ms. Kelly also asks for all leave time lost due to this retaliation to be compensated back to her.

54. Ms. Kelly also asks that her attorney fees be completely covered.

55. Ms. Kelly requests that she be removed from this Module and placed in a different Building, so as to avoid any contact with the individuals in this Module.

VII.  CLAIM 3 – Denial of Reasonable Accommodation - 29 U.S. Code §791 and the ADA

 56. All facts averred in Section IV, V, and VI are incorporated and adopted herein as if specifically pled in this Section.

Phone: 1-800-579-9864
Fax: 1-360-294-2165
Email: admin@hanoverlawpc.com

HANOVER LAW, PC
1200 G. St. NW., Suite 800
Washington, DC 20005
2751 Prosperity Ave., Suite 150
Fairfax Virginia 22031

57. The Agency has continued to refuse a permanent accommodation for Ms. Kelly. They approve only short, two to three month extensions, and then require her to re-apply.
58. This is harassing behavior, and it is targeted to intimidate and cause Ms. Kelly to quit her job.
59. The Agency is well aware of both the physical and mental challenges faced by Ms. Kelly, and Ms. Kelly continues to submit evidence to support the permanent accommodation she needs.  See, Exhibit 5, *Medical Documentation supporting physical disability, 2017*;  Exhibit 6, *Medical Documentation supporting mental disability*.
60. Ms. Kelly has suffered extensive and ongoing mental trauma as a result of ping-ponging between accommodated….and not accommodated.  She requests $150,000 in compensatory damages for the ongoing failure of the Agency to provide a permanent reasonable accommodation for which she is entitled.
61. Ms. Kelly requests that she be transferred to a new Building as a part of her reasonable accommodation.  She continues to fear current and future retaliation is she is merely "moved down the hall" in the same building.
62. Ms. Kelly requests that her reasonable accommodation include at least four days per week telework.  This should be sufficient to significantly reduce friction between her and Ms. Comer, as well as ensure that Ms. Kelly is able to be more productive outside a hostile work environment.  Additionally, Ms. Kelly is much better equipped to handle her urinary track problems at home.

NOW THEREFORE, your plaintiff, Ms. Monique Kelly, through Counsel, demands relief from the continued illegal and unwanted harassment, retaliation, and failure to provide reasonable accommodation as follows:

63. $300,000 in compensatory damages for harassment related to her disability.
64. $300,000 in compensatory damages for retaliation related to her EEO and complaints regarding managers and treatment in the reasonable accommodation process.

Phone: 1-800-579-9864
Fax: 1-360-294-2165
Email: admin@hanoverlawpc.com

2751 Prosperity Ave., Suite 150
Fairfax Virginia 22031

**HANOVER LAW**, PC
1200 G. St. NW., Suite 800
Washington, DC 20005

Phone: 1-800-579-9864
Fax: 1-360-294-2165
Email: admin@hanoverlawpc.com

2751 Prosperity Ave., Suite 150
Fairfax Virginia 22031

**HANOVER LAW**, PC
1200 G. St. NW., Suite 800
Washington, DC 20005

65. $150,000 in compensatory damages for failure to provide a permanent reasonable accommodation, i.e. grant and then withdraw at the whim of the Agency.

66. Reasonable Accommodation: Transfer to a new building.

67. Reasonable accommodation: Telework 4 days per week.

68. Payment of costs and attorney fees.

69. Such other relief as this Honorable Court may find appropriate.

IN ACCORDANCE WITH 42 USC §1981a(a)[1] AND THROUGH 42 USC §1981a(c), PLAINTIFF DEMANDS A JURY TRIAL.

Respectfully,

Monique Kelly, SGT., USA Retired


Through Counsel,


Sean R. Hanover, Esq.

DC Bar: 1002709
Hanover Law, PC
2751 Prosperity Ave., Suite 150
Fairfax, VA 22031
(C) 703-402-2723
(F) 360-294-2165
seanhanover@hanoverlawpc.com

---

[1] 1981a(a) extends compensatory damages specifically in cases of a suit against the Government (referring to 42 USC §2000e-16). 1981a(c) specifically extends jury trials to "any party" who is entitled to compensatory damages under 1981a(a). "[A]ccepted principles of sovereign immunity require that a jury trial right be clearly provided in the legislation creating the cause of action." Lehman v. Nakshian, 453 U.S. 156, 162 (1981). In this case, by expressly stating that compensatory damages applied to actions against the Federal Government, and further, that where compensatory damages apply, a jury trial may be had by any party – congress did extend the right for a jury trial against the sovereign.

Phone: 1-800-579-9864
Fax: 1-360-294-2165
Email: admin@hanoverlawpc.com

2751 Prosperity Ave., Suite 150
Fairfax Virginia 22031

**H**ANOVER **L**AW, PC
1200 G. St. NW., Suite 800
Washington, DC 20005

## **EXHIBIT LIST**

| | |
|---|---|
| 1 | Letter Accompanying the *Report of Investigation* on case 16-0864 |
| 2 | Letter indicating Agency Final Decision on case 16-0864 |
| 3 | Judge's Order showing Agency lack of action on case 16-0226 |
| 4 | Medical Documentation showing PTSD and physical disabilities of Ms. Kelly |
| 5 | Continuing request for Reasonable Accommodation with accompanying medical proof of 100% service related disability, yet doctor approval for work at home as productive and reasonable. |
| 6 | Letter from Doctor indicating that permitting Ms. Kelly to work from home would be productive and beneficial to the Agency. |

ROI (Report of Investigation)

    Exhibit 1 (77 pages)   Supporting materials submitted by Ms. Kelly during the investigation;  documentation developed through the investigator incident to the investigation.

    Exhibit 4 (10 pages)   Affidavit of Ms. Kelly

    Exhibit 15 (3 pages)   Documented request for Reasonable Accommodation

    Exhibit 23 (11 pages)   Affidavit of Ms. Comer, and formal letter notifying her that Ms. Kelly is accusing her of an EEO violation.